The Justices, &c., *vs.* The Griffin & West Point Plank Road Co.

No. 3.—THE JUSTICES OF THE INFERIOR COURT OF PIKE COUNTY, plaintiffs in error, *vs.* THE GRIFFIN & WEST POINT PLANK ROAD Co., defendants in error.

[1.] In forming a Special Jury, it is a good cause of challenge, to one on the Grand Jury list, that he has expressed an opinion as to which party ought to prevail, or that he has a wish or desire as to which should succeed.

[2.] The person thus challenged, if challenged, is a competent witness to prove the matter of the challenge.

[3.] Persons summoned merely as talesmen for the Special Jury, need not be sworn as Grand Jurors.

[4.] In Equity, what is admitted in the answer, is not in issue. It need not be proved.

[5.] A new trial will not be granted for an erroneous decision, if the decision has hurt nobody.

[6.] In a bill for damages, for obstructing a highway, and a bill for opening the highway, the actual loss which the plaintiffs have sustained by the obstruction, up to the time of trial, is the measure of the damages.

[7.] The *agreement* between the Road Commissioners and the Plank Road Company, to the effect that the former should accept from the latter, for parts of the Flat Shoals Road, such compensation or damages as referees, appointed under the Company's Charter, should fix, *estopped* the Commissioners of Roads; and therefore, estopped the Justices of the Inferior Court from saying that such parts of that road were not *necessary* to the Plank Road Company. And the *awards*, if operative at all, could only contribute to this effect of the agreement.

[8. 9.] The interest of the citizens of Pike county, in the result of the suit, not being certain—but if certain, being the same sort of interest which the citizens of a county have in the result of an indictment for an offence punishable by fine—they are not incompetent as Jurors in the case, or as witnesses against the Plank Road Company.

In Equity, in Pike Superior Court. Tried before Judge STARK, April Term, 1853.

This bill was filed by the Justices of the Inferior Court of Pike county, for the use of the people thereof, against the Griffin & West Point Plank Road Company.

The bill alleges, that the Company had seized and appropriated to their use, the public high-way, leading from the

City of Griffin to the Flat Shoals, on Flint River, passing through three Militia Districts in the said county of Pike, and known as the Flat Shoals Road; that by fraud, and combination with the Commissioners of Roads in said districts, the Company had procured the appointment of Commissioners, as provided by the terms of their Charter, who had assessed, in one of the districts, no damages or compensation, and in the others, merely nominal compensation, for the use of the public road, as the site to be occupied by the plank road; that the Commissioners of Roads, in two of the districts, had, in accordance with the award of the arbitrators appointed, proceeded to execute a fee simple title to the public road, sixty feet wide, to the said Company.

The bill charges, that there was no necessity for the said Company to appropriate and occupy any part of the said public road with their plank road; and that by so doing, they have violated the provisions of their Charter, which, the bill alleges, confers no such right.

The bill charges, in order to show that no such necessity exists, that Mr. Heely, the contractor, had proposed to build the road for $300 less, per mile, if they would allow it to be laid down in a site different from that of the public road.

The bill charges, that the acts and doings of the Company, in appropriating the public road, &c., tend to the injury of complainants, as guardians of the interests of the people of Pike county, inasmuch, as if said Company shall be allowed so to do, they will be compelled, in compliance with the wishes of a large majority of the people of the county, to open a new road, along and near the site of the Flat Shoals road, thus occupied by the Plank-road, and that such public road, will cost the county of Pike, not less than $6000.

The bill prays that the Company may be enjoined, until security is given for such damages as may be recovered against them; that a perpetual injunction be granted, the deeds cancelled, and that the Company be decreed to pay such damages as complainants may have sustained, as the guardians of the pecuniary interests of the people of Pike county.

The defendants filed answers, denying all fraud charged in the bill, and alleging the perfect fairness of the whole transactions.

They also filed pleas, setting up the awards, with answers supporting them, denying all fraud. Also, a plea stating that since the commencement of the suit, the General Assembly of Georgia had laid out and established a new county, viz: the county of Spalding, in which new county, was included a large portion of the highway stated in the bill.

At the trial, the Court ordered the issues upon the pleas, to be tried at the same time with the main issues made by the bill and answers.

Counsel for the Plank Road Company, moved the Court to have the Grand Jurors in attendance and sworn, brought into Court, for the purpose of placing them upon the *voir dire*, to see if they, or any of them, were liable to challenge for cause. The Court granted the motion, and the Grand Jurors were each placed upon his *voir dire*, and various questions asked by the Court, as to "the formation and expression of an opinion as to which party ought to prevail in the cause"; and farther, "have you any wish or desire as to which party ought to succeed in this cause"; and those Jurors answering in the affirmative, were excluded, for cause.

By this means, the Jury were reduced below *eighteen*.—The Court then ordered talesmen to be summoned, who were sworn simply as *Special* Jurors, and not impanneled regularly as Grand Jurors. To this whole proceeding, the counsel for complainants objected; and the Court overruling the objection, they excepted thereto.

Counsel for the Plank Road Company objected to the whole array, on the ground that they were all citizens of Pike county; and that if the complainants succeeded in recovering damages for the obstruction of the highway, those damages would, by increasing the county funds, diminish the necessity for taxation, for the repair of the highways. The Court overruled this ob-

jection, and this is assigned as error by the Plank Road Company.

The complainants offered to read an exemplification of the order passed in 1830, by the Inferior Court, opening the Flat Shoals Road. The Court refused to allow it to be read, because the fact was not denied. To this decision, complainants excepted.

The complainants then offered to read certain letters of his Honor, Judge STARK, to show at what time the application was first made to his Honor, for an injunction. The Court rejected this evidence, and complainants excepted.

The complainants then proposed to prove, by certain of their counsel, that the bill was presented to his Honor in August, 1850, and kept by him until 15th of Sept. 1850, when it was returned, with his sanction refused. The Court rejected the evidence, and complainants excepted.

The complainants then tendered in evidence, a notice, served on the 22d of July, 1850, upon the Plank Road Co., of their intention to resist the Company's usurping the highway; and requesting the Company to desist from its designs and acts, in taking, appropriating and obstructing the highway. The Court rejected this testimony, and complainants excepted.

The complainants then proposed to prove how much the Flat Shoals Road, occupied by the Plank Road, was worth per mile; and how much it would cost the county to obtain the right of way and build another road—all which the Court rejected, and complainants excepted.

Complainants then proposed, in various ways, to introduce proof, as to the necessity existing for the Plank Road Company to occupy and take the public highway. For instance, they proposed to prove, that the Plank Road Company could have got the right of way over a route off the Flat Shoals road; and one passing through a country not obstructed by mountain barriers, ravines, &c. The Court refused to let them introduce the proof, and they excepted.

Complainants then required defendants to produce their books, under a notice, for the purpose of showing the amount

of tolls they had received. The Court refused to compel the defendants to respond, and complainants excepted.

Defendants then, in response to a notice from complainants, produced the book containing the Minutes of their Board of Directors. Complainants examined it, and then declined to introduce it. Defendants insisted the book was then evidence for either party, and offered it as such, which was objected to by the complainants, and the objection over-ruled by the Court; to which decision, the complainants except, and say it is error. The defendant then read, as evidence, from the Company's Minutes, a By-Law of the Company, as follows : "Passed 12th April, 1850—19th Sec. All travel over the Plank Road for neighborhood purposes, shall be free of toll, to wit: such as going to church, funerals, mill, muster, Courts, elections, blacksmith shops, after physicians, medicines, and neighborhood visits of every kind. Notwithstanding, it was objected to by complainants—to which decision complainants except, and say it was error. Complainants then closed. Defendants introduced no other evidence. After argument of counsel, the Court charged, in substance, as follows :

The Justices of the Inferior Court of Pike County, *vs.* The Griffin and West Point Plank Road Company.

*Bill, &c.*
*Tried at Pike,*
*April Term,* 1853.

## CHARGE.

(After a brief summary of pleadings,) charged as follows : This bill is filed to restrain the usurpation of a franchise by the Plank Road Company, and to recover damages for the injury done to the county thereby. Since the filing of the bill, a portion of the public road alleged to have been illegally and fraudulently seized by the defendants, has been, by an Act of the Legislature, included in the county of Spalding, and with that portion of the road, you have nothing to do. Pike county has no interest in it, as is conceded by the complainants.—

The Justices, &c., *vs.* The Griffin & West Point Plank Road Co.

A right of way, is a right to pass over the lands of another—over a public road—every one has this right to pass, free.— The Flat Shoals road, a portion of which is alleged to be fraudulently occupied by the defendants, to the exclusion of the public, is admitted to be a public road, duly established by express authority of law, or by proscription ; in either case it is, or was, before its occupancy by the defendants, to all intents and purposes, a free public road.   When this bill was first presented for my sanction, I refused to sanction it, chiefly because I thought the Judges of the Inferior Court were not the proper parties.   Previous to the American Revolution, the public roads were parts and parcels of the royal prerogatives— they appertained to the Crown, and were called the King's Highways.   By the Revolution, the State of Georgia succeeded to all the sovereign rights of the Crown : and hence, I thought all the public highways belonged to the State ; and that this bill should have been brought by the State, or an information, at the instance of the Solicitor, for and in behalf of the citizens of the State.   Besides this, I thought I saw a manifest impropriety, in the Inferior Court embarking in law-suits in other Courts, except in cases expressly authorized by law ; or, in cases where its right to do so, arises by necessary implication, from the exercise of some well defined right or duty.   I also thought I saw an impropriety in their entering into a law-suit as parties, when they would, by law, have to select the Jurors to try the cause—not that I apprehended, or do now apprehend any abuse of power, in the selection of Jurors by that Court; but the course proposed to be adopted, I thought wrong in principle ; and that the bringing of the case in the name of the State, would obviate all difficulties on that score. For these, and other reasons, I withheld my sanction from the bill.   The decision was excepted to, and the Supreme Court have thought, that from the interest which the complainants have in the fund, under the awards mentioned in the bill, (a matter which has escaped my attention,) the Inferior Court have the right to institute this suit.   The Supreme Law interpreting power of the State has so adjudged; and the judg-

ment must be obeyed and respected.  You are, therefore, to consider all objections to the parties as removed; and that the complainants are properly in Court.   In behalf of the complainants, it is insisted, that in procuring the right to a portion of the Flat Shoals Road, there have been numerous violations of the defendants' Charter; and that thereby, the public has been defrauded out of the right of way, and they insist on a restitution of that right, and damages for its violation.  It is the duty of the Court to instruct you in matters of law; and by these instructions you are absolutely bound.  Fraud is usually a mixed question of law and of fact.  For instance, a bill is filed to set aside an award—the complainant alleges that the award was procured by fraud, in this—that one of the referees took a bribe from the prevailing party.  In such a case as that, the Court would instruct you, that an award obtained by bribery, must be set aside, leaving the Jury to determine, from the evidence, the question of fact, whether, in truth, a bribe was given.  So, in the case before you, it will be the duty of the Court, to instruct you what fact or facts amount to such a fraud as will be sufficient to set aside the proceedings under which the defendants claim the right of using and occupying, with their Plank Road, certain portions of the Flat Shoals Road in this county.  It will be exclusively your province to determine whether or not these facts have been proven, either positively or by circumstances.  The 6th, 7th, 8th and 14th sections of the defendants' Charter, repeatedly read in your hearing, point out the mode by which this defendant may obtain the right to use and occupy with their Plank Road, certain portions of the public road.  Now if, in the various departures from the Charter, you find to exist, in the proceedings under which the defendant relies, or in any of them, the defendants have obtained any advantage over the public, unfairly, or fraudulently, or without agreeing to render a fair equivalent, or fair consideration, after all these proceedings, under which they claim to have obtained the right of way over portions of the public road, must be set aside and treated as nullities—and all such portions of the Flat Shoals Road, as have been thus

fraudulently appropriated to the defendants' use, must be restored to the use of the public, by the grant of a perpetual injunction. The irregularities admitted to exist in the proceedings, will authorize you to look scrutinizingly into the whole of them; and if you discover that this Company has, by any trick, artifice or device, procured any advantage to itself, without a fair equivalent, then treat those awards and ratifications as nullities; and let the parts of the road, which have been fraudulently usurped by the Company, be re-appropriated to the use as free roads.

The defendants, by their plea, claim title to the portions of the public road occupied by them, as having been obtained without fraud, under the Charter, by purchase, for a fair and valuable consideration. By their answer, in support of the plea, they deny all fraud, combination and collusion, and insist on the right to the occupation of portions of the public road, by virtue of the award, in one of the districts, and by virtue of the awards and ratifications, by the Road Commissioners in the two other districts. They further contend, that the compensation paid, and to be paid by them, for the use and occupation of portions of the public road is: First. The general benefit and advantage accruing to the public, from the erection and establishment of the Plank Road. 2d. The pecuniary compensation set forth in the awards, and which they say have been paid or tendered. 3d. The exemption from labor, in keeping the public road in repair, by the road hands of the different districts. 4th. The exemption from damage and inconvenience, to individuals, land-holders, from having a Plank Road and public road, both running in the same direction and in close proximity to each other. 5th. They insist, that the following By-Law of the Company, entered into, and constituted a portion of the consideration, for which the use of certain portions of the public road were conceded to them: 12th April, 1850, 19th Sec.—All travel over the Plank Road, for neighborhood purposes, shall be free of toll, to-wit: such as going to church, funerals, mill, muster, court, elections, blacksmith shops, after physicians and medicines, and neigh-

The Justices, &c., *vs.* The Griffin & West Point Plank Road Co.

borhood visits of every kind.  The complainants reply to this portion of the defence, that this by-law is the act of the defendants, and may be repealed at the pleasure of the Company.  But in the opinion of this Court, if the Company, or its agents, used the by-law as a means of procuring the right of way along a portion of the public road, and the use of the public road was conceded to them, partly on account of the existence of the by-law, then the perpetual right to the benefit of the by-law vested in those for whose benefit it was passed, and it is irrepealable.  The Company, by repealing it, cannot deprive the public of the benefits arising under the repeal' after having used it, in obtaining an advantage.  This would be such a fraud by the Company, as the Courts would be bound to prevent.  But it is contended by complainants, that the following objections exist to those awards ; and that they constitute such fraud, *per se*, as to vitiate the awards : 1st. That some of the appraisers had signed the petition presented to complainants, and were, before they entered on the duties of their appointment, in favor of conceding to the defendants the use of the public road, and had so expressed themselves in the petition.  2d. That the names of the appraisers, appointed by the Judge of the Superior Court, were suggested to the Judge by the defendants.  3d. That the compensation to be assessed by the appraisers, must be a pecuniary compensation, and that the want of such compensation, vitiates the awards.  4th. That the want of five days' notice, of the time and place of trial, vitiates the awards.  5th. That the failure of the appraisers to state in the awards, particularly the nature and amounts of benefit and advantage from the erection of the road, as well as the loss or damage from the obstruction of the right of way &c., vitiates the awards.  As regards the objection, that some of the appraisers may have been, before the trial, in favor of conceding to the defendants the use of the public road, and had so expressed themselves in the petition, might be an objection to the competency of an arbitrator or Juror, if made known before trial, and would constitute a circumstance proper for consideration, in determing the ground

of an award; but a just award, untainted with fraud, or un-
assailed by other evidence of corruption and partiality, in my
opinion, should not be set aside, on such a ground as this alone.
An award or verdict, rendered by an arbitrator or Juror,
whose previous opinions are ascertained to be strongly in fa-
vor of the prevailing party, before trial, ought to be the more
narrowly looked into on that account; and yet, if the award
or verdict were clearly just and righteous, and obtained with-
out fraud, it ought not to be shaken, merely on account of the
preposessions or prejudices of the Juror or arbitrators; for
his preposessions may have been on the right side, and may have
extended no further than law and justice demands.  As re-
gards the second objection, that the names of a portion of the
appraisers were suggested to the Judge by the defendants, I
am of opinion that these awards and ratifications, if free from
fraud and collusion, cannot be set aside on that account.  And
again, it is contended, that the compensation to be awarded by
the appraisers, must be a pecuniary compensation, and the ab-
sence of such pecuniary compensation, renders the awards a
nullity.  The appraisers or commissioners must, before they
act, take an oath, faithfully and impartially to discharge the
duties assigned them.  These duties are, to take into consider-
tion the loss and damage which may occur, in consequence of
the public road being taken, or the right of way being ob-
structed; also, the benefit and advantage the owners of the
public road may receive, by the construction of the Plank
Road.  Now, if these appraisers were honestly of opinion,
that the benefits arising from the road, exceeded the damage
and injury; that the public interested in the old road, were get-
ting the better end of the bargain, on account of the free
travel to be allowed on the Plank Road, and the other public
benefits arising therefrom, and the exemption of the citizens
from road duty; if these are their honest convictions, they
could not render a pecuniary consideration into the bargain,
without doing violence to their oaths; and in the absence of
fraud or collusion, you will not distrust these awards, on ac-
count of the want of pecuniary compensation.  It is further sought

to set aside these awards, because five days' notice of the time and place of trial, was not given to the Road Commissioners.   The object of giving the five days' notice is, that the parties may have the opportunity of preparing for trial; and the want of this notice would be a serious objection to these awards, and alone sufficient to set them aside, if it were shown that for the want of notice, the Road Commissioners were hurried into the trial, without opportunity for preparation, or were not, in fact, ready for trial.   It is not, however, stated, or in the bill, that they were less ready for trial, for want of the notice ; or that they insisted on the want of notice, before going into the trial.—— You have before you the answers of a portion of the Road Commissioners on this point.   Another ground on which it is sought to assail these awards and ratifications is, that there was no necessity for the occupation of any portion of the Flat Shoals Road; and that the question of such necessity should be inquired into by yourselves; and if no such necessity existed, then it is contended that the awards should be set aside.——. This Plank Road passes through a portion of three districts in the county of Pike—the 545th, 580th and the 505th districts.   From the county line to Driver's, it occupies a portion, of the Flat Shoals Road; from Driver's, for some distance, it occupies the Zebulon Road—about which there is no complaint in the bill; from the Zebulon Road, it diverges towards the Flat Shoals Road; and at Reid's late residence, it intersects with and occupies considerable portions of the Flat Shoals Road, to its present terminus—all these facts are conceded.—— In two of the foregoing districts, the Commissioners of Roads. have ratified the awards.   The Commissioners of Roads had the right, under the Charter, to agree with and convey to the defendants, by fair bargain and sale, the use of such portions. of the public highway, as might be agreed upon as rea. sonably necessary to be occupied by the defendants, in the construction of their Plank Road.   Now, although the Road Commissioners may have refused to treat with, or make such conveyance to the Company in the first instance, until the

judgment of arbitrators, indifferently appointed, might be had on the subject, under oath ; yet, if the awards, made without fraud, they, without fraud or collusion, in good faith to the public interest, ratifies the awards, in the opinion of this Court, the ratifications and awards are equivalent to an agreement and conveyance in the first instance. It being no where alleged, in the bill, that the defendants do occupy or intend to occupy any more of the Flat Shoals Road, than was meant or intended to be conceded to them in the awards, these ratifications and awards, if free from fraud or collusion, settled the question of necessity in these districts. As regards the 580th district, there is no ratification of the award by the Road Commissioners—only one of them agreed to the award, and ratified it when made. The other two protested against it, solely, however, on the ground of the inadequacy of the amount awarded against the Company.

In looking to the award itself, we find it awards against the Company twenty-five cents per mile, if it shall think proper to take either the Fayetteville or Thomaston Road ; and whenever they may think proper to take the Flat Shoals Road, they shall pay fifteen dollars per mile. Now, in the opinion of this Court, this award, if fairly obtained, without fraud, settled the question of necessity, and has given the Company their election, to take the Flat Shoals Road, or either of the others, if they thought proper. The record shows no dissent of the Road Commissioners, except as to the amount of compensation. If the amount awarded was insufficient, their plain and adequate remedy was at law, by appeal, to a Special Jury—a failure to appeal, in the opinion of the Court, precludes them or others from opposing the awards, except for fraud or fraudulent collusion. And finally, it is sought to set aside these awards, because the appraisers have not stated in the award, particularly, or with sufficient particularity, the amount and nature of the loss and damage, and the nature and amount of benefit and advantage.

The awards are irregular, in this respect, and not in conformity to the Charter ; but, in the opinion of this Court, neither this ob-

jection, nor either of the others, nor all of them together, are sufficient to overturn these awards and ratifications, if they were fairly obtained; and if the public has not been defrauded, and if the public has not been deprived of some important and valuable right, without a fair consideration. The provisions of the Charter, the violation of which are here complained of, are all directory, and intended to guard the rights of the parties against wrong—they are intended as land-marks, for the guidance of the parties, and those entrusted with the care of the public interests, in the attainment of right, and in the avoidance of error and fraud. Now, if the public, by reason of any of the irregularities complained of, has been defrauded; that is, wrongfully deprived of any valuable or important right, in procuring these awards and ratifications, or either of them, then set them aside, and restore to the public all the rights it has been deprived of, by awarding a perpetual injunction.—But if the public interest has suffered no detriment—if it has been deprived of no important or valuable right, without a fair equivalent; if there has been no fraud proven to your satisfaction, positively or by circumstances, all the provisions of the Charter should be construed so as to uphold the right and prevent the wrong; if there has been no wrong or fraud, you will not allow the complainants to perpetrate a wrong, by a re-appropriation of this road to public use.

The defendants had the right, so far as portions of the public road were necessary for the construction of their plank road, to obtain its use by fair bargain and sale, from the Road Commissioners, in the first instance; and failing to do so, they had the right to obtain it by fair arbitration. In either instance, they had the right to obtain what is called a good bargain, if they could do so without fraud. The Road Commissioners had the right to obtain a good bargain for the public, if they could do so without fraud. Courts of Equity ought to relieve against contracts procured in fraud, but a Court of Equity cannot relieve against a fair bargain or a fair award, untainted with fraud.

It is again insisted, that through fraudulent collusion be-

tween the Road Commissioners and the defendants, the directions and requirements of the Charter have been dispensed with, in obtaining possession of the public road; and that, therefore, the whole of the proceedings should be annulled. And the Court here instructs you, that such fraudulent collusion as this must annul the whole proceedings, under which the defendants claim the title. You are to inquire whether or not the directions and requirements of Charter have been dispensed with, through any fraudulent collusion or design, between the the Road Commissioners and the defendants; if so, the whole of the proceedings are to be annulled. It must, however, be a fraudulent collusion, established by proof or circumstances to your satisfaction. Fraud is never to be presumed; it must either be proven positively or shown by strong unequivocal circumstances.

The evidence is all before you: the answers of the defendants, so far as they are responsive to the allegations in the bill, are evidence, unless overcome by other testimony, and are to be taken as true. The answer of a defendant in Equity, immediately responsive to the allegations in the bill, must be taken as true, unless overcome by the testimony of two witnesses, or one witness and circumstances corroborative of the testimony of that witness, sufficient to cast the balance against the answer.

Regulate your verdict by the principles of law, as laid down by the Court—find the facts for yourselves, of which you are exclusively the judges.

To this charge complainants excepted, and have assigned numerous errors thereon.

In addition to the exception, as to the pannel of the Jurors, defendants also excepted to a decision of the Court, over-ruling a similar objection to the witnesses of complainant, on the ground that they were interested, being citizens of Pike county.

On these exceptions they assigned error.

Both causes were heard together in this Court.

McDonald and Floyd, for the Griffin Plank Road Company.

Q. C. GIBSON and MOUNGER for the Inferior Court of Pike County.

*By the Court.*—BENNING, J. delivering the opinion.

Are the questions put to the Grand Jurors legal?

In the formation of a Special Jury, by the Judiciary Act of 1799, there may be challenges for cause, as well as challenges without cause. (*Cobb's Digest,* 548.) The right of challenge for cause, given by this Act, was not taken away by the Act of 1810, "to amend the several Judiciary Acts" then in force in the State. This Act of 1810 requires that the Special Jury shall be formed in the following manner: The Clerk shall produce a list of the Grand Jurors present and empannelled, from which the parties, plaintiff and defendant, may alternately strike out one, until only twelve are left, who shall forthwith be empannelled and sworn as Special Jurors, to try the "appeal cause". But this requisition is to be construed as applying to cases in which the Grand Jury list, has upon it no person against whom there exists good cause of challenge. Its restriction to cases of this kind, is made necessary by contemporary construction and usage, by other legislation, in *pari materia,* and especially by a provision of the Constitution, viz: that which declares, "that trial by Jury, as *heretofore* used in this State, shall remain inviolate". Of these reasons, it is not necessary to speak with particularity. It may be remarked, however, that it is never to be presumed that the Legislature intends one of its Acts to be inconsistent with a provision of the Constitution. And in Jury trials, before the time of the Constitution, challenges for cause were an essential element.

This being so, is it, in the formation of a Special Jury, good cause of challenge against a person on the Grand Jury list, that he has expressed an opinion as to which party ought to prevail, or that he has a wish or desire as to which should succeed?

[1.] It is. That is settled by *Cook's case.* "Cook being

indicted for high treason, and the Jury called, he offered to ask the Jurors, in order to challenge them, if they had not said he was guilty or would be hanged; *et per cur.* This is a good cause of challenge". (1 *Salk.* 153.) So *Hawkins* says, "it hath been allowed a good cause of challenge", that the Juror "hath declared his opinion beforehand, that the party is guilty, or will be hanged, or the like". "Yet," he adds, "it hath been adjudged that if it shall *appear* that the Juror made such declaration from his knowledge of the cause, and not out of any ill-will to the party, it is no cause of challenge". (*Bk.* 2, *ch.* 43, *sec.* 28.) It is sufficient to say, that nothing of this sort appears in this case. And see 2 *Co. Litt.* 157, *a.* (*l.*) (*n.*) (*p.*)

If the formation and expression of an opinion, that one party, rather than the other, ought to prevail, be a good cause of challenge, much more is the actual "wish" or "desire" that one party should so prevail, a good cause. Such wish or desire is partiality itself—not merely evidence of partiality—which is the most that the formation and expression of an opinion can be.

These, then, are good causes of challenge. May they be proved by the testimony of the Juror, himself, or must they be proved by evidence *aliunde?*

Why may they not be proved by the Juror himself? They are matters of fact, and why is a person called as a Juror, not as competent to prove one matter of fact in the case, as another? Such person, unless interested in the event of the suit, or falling within some other exception to the general rule, that all persons are competent to testify as witnesses, is clearly *competent* to testify of any matter of fact. Surely authority is not needed to prove this.

[2.] Persons, then, called as Jurors, are *competent* to testify concerning matters of objection to themselves, as Jurors. If, in such case, they do testify, it follows that their testimony is legal; and its being admitted by a Court, cannot be made a ground of error.

That is this case. The persons of the Grand Jury, on being asked the questions above referred to, answered them without

objection, and the Court acted on the answers. The Court did right.

Had these persons themselves objected to answering the questions, the result might have been different; although, I must say I strongly think it could not have been.

The result would have been different, if they could have shown that answering the questions would render them *infamous or criminal.* Upon the trial of no issue, before any tribunal, Court or triers, is a person *bound* to tell what will make him out a criminal, or perhaps what will cover him with infamy.

And it is upon this ground that Jurors have been excused, by Courts, from answering questions on the *voir dire.* In *Cook's case,* (supra) the Court say "This is a good cause of challenge, (saying the prisoner is guilty or will be hanged,) but then the prisoner must prove it by witnesses—not out of the mouth of the Juryman. A Juryman may be asked upon a *voir dire,* whether he hath any interest in the cause—whether he hath a freehold? for these do not make him *criminal;* but you shall not ask a witness or Juryman whether he hath been whipped for larceny or convicted of felony, or whether he was ever committed to Bridewell for a pilferer, or to Newgate for clipping and coining, or whether he is a villain or outlawed, because that would make a man discover that of himself, which tends to shame, crime, infamy or misdemeanor. So it is in this case—the answer would charge him with misdemeanor or misbehavior. *Et per Powell,* Justice. In a civil case, you may perhaps ask a man if he has not given his opinion beforehand, upon the right, for he might have done that as arbitrator between the parties—otherwise, in this case".

When put upon his *voir dire,* the Juror becomes merely a *witness,* and he may be examined as a witness. He will be exempt from answering such questions as witnesses are exempt from answering, and from no others.

The questions put to the Jurors in this case, are not such as witnesses would be allowed to refuse to answer; they are such

as would not make the Jurors infamous or criminal, no matter which way they might be answered.

When it so happens that talesmen have to be summoned to serve as Special Jurors, is it necessary that they should be sworn as Grand Jurors, before they can be used as Special Jurors?

To swear them in such a case, as Grand Jurors, would at least be a useless act. And to make the failure, on the part of a Court, to do a useless act, a matter of error, there should at least be a Law commanding that act to be done, in unmistakable terms. Is there such a Law, in reference to the formation of a Special Jury, by the means of talesmen?

There is no such Law. The Act of 1810 must be such Law, if there is any such. It declares that " all Special Jurors shall be taken from the Grand Jury list, in the following manner : The Clerk shall produce a list of the Grand Jurors present, and there empannelled, from which the parties, plaintiff and defendant, or their attorney may strike out one alternately, until there shall be but twelve Jurors left, who shall forthwith be empannelled and sworn as Special Jurors, to try the appeal cause".

This Act is to be construed with all other Acts of the State, on the same subject. Construed in this way, it does not, as we have seen, abrogate the Law which gives the right to challenge Special Jurors for cause—it does not extend to cases in which the list of Grand Jurors empannelled and sworn happens to have on it persons against whom exist objections for cause, but only to cases in which the list has on it persons against whom no such objections exist. So construed, in reference to the present point, it merely means to say that the " Clerk shall produce a list of the Grand Jurors present and empannelled, from which the parties" shall select a Jury, provided challenges, for cause, do not reduce the number on the list below the number required to make out a pannel of Grand Jurors; but that if challenges shall reduce the number on the list below that number, then the Act of 1799 is to come into play, which says: " The Court may order the Sheriff or his deputy to summon.

by-standers or others, qualified as hereinbefore required, for the trial of such cause or causes, sufficient to complete the pannel". And of course, if summoned, these talesmen are to have their names put on the pannel of Grand Jurors, in the places of those whose names have been struck from it for cause. And this being done, it completes the "pannel" for the occasion; that is, for the purpose of supplying a means of obtaining a Jury for the trial of the special case in hand. In order to complete the pannel for this purpose, it is not necessary that the talesmen should also be sworn as Grand Jurors.

This view is confirmed by the mode provided by the Act of 1799, for selecting Special Juries for new trials. According to that mode, the Clerk was to produce a list of "the *original pannel of Grand Jurors returned* to the term", and the Special Jury was to be made, by alternate strikes from this list, until only twelve should remain. That is to say, the Jury was to be got from all of the whole thirty-six persons drawn for Grand Jurors, who had been returned to Court as summoned, to serve as Jurors. Now of the whole number so returned as served, not more than twenty-three could be *sworn* as Grand Jurors; yet, the rest, over and above the twenty-three, so, sworn, would be of those from whom, equally with the sworn ones, the Special Jury would be to be struck. The substance of the mode was, that Special Jurors were to be made out of those who were *drawn* as Grand Jurors; or in the event the number of these should not be sufficient, then out of talesmen —"by-standers or others"—*of the class* in the community to which the drawn Jurors belonged. It was of no concern to the mode, whether any of the drawn or Tales Jurors should be sworn *as Grand Jurors* or not.

[3.] Upon the whole, therefore, we cannot say that we find in the Statutes, any direct or indubitable requisition for the doing of this useless act, swearing persons as Grand Jurors, merely to qualify them to be Special Jurors. And we cannot, therefore, say that we think the Court below erred in not requiring this act to be done.

[4.] The object of using the order of the Inferior Court, by which the Flat Shoals Road was opened, as evidence, could have been only to show that that road was a public road. But that this road was and had been for twenty years, a public road, was admitted by the answer. The question, therefore, whether it was or was not a public road, was not in *issue;* and evidence is receivable, to prove only what is in issue.

It was wholly immaterial at what *time* the application, by the Justices of the Inferior Court for an injunction, was made to Judge STARK, unless the Plank Road Company had *notice* of the application. The object of proving the time of the application could have been no other than to show that the Inferior Court *objected* to the course of the Plank Road Company; that is, to show that it did not stand by and see the Company lay out its money, without warning, and so to show that it had not given ground for the implication, that it acquiesced in the action of the Company. But nothing in the application to Judge STARK for the injunction, could prove this. This was to be proved by something of which the Company, not the Judge, had notice.

Besides, it may be added that it does not appear that the Justices of the Inferior Court could have suffered any injury at all, by the rejection of these letters, had they been proper as evidence. The Company did not prove that they had completed any part of the Road, *before* they had notice of the purpose of the Inferior Court, to oppose their course in building it. The Company proved no acquiescence.

This remark is equally applicable to the rejection of the testimony of the counsel of the Justices of the Inferior Court, which was offered to prove when the bill was presented to Judge STARK for his sanction, and how long he kept it.

[5.] A new trial will not be granted for an erroneous decision, if it harms nobody.

And as to Judge STARK's letters, it may be said, too, that they were not the best evidence—his sayings, whether verbal or written, could not bind the Company in this case.

The rejection, as evidence, of the notice given by the Inferi-

or Court to the Plank Road Company, of the intention of the Court to resist the Company's usurping the public road, and also requesting the Company to desist from its acts and designs, in taking, appropriating and obstructing the road, was no matter of error.

1. That notice was admitted by the answer, and so was not in issue.

2. The Plank Road Company offered no proof to show any acquiescence on the part of the Inferior Court, in the Acts of the Company. Therefore, the Inferior Court had nothing to gain or lose by proving such a notice. So its rejection could do them no harm.

The rejection of the evidence of Mangham, that the order or act of the Inferior Court, in which the Court use the words "the Court have bestowed on this subject the consideration which its importance demands, and do not hesitate to express' their opinion that it is the duty of the Commissioners of Roads to follow the Law, as laid down in the eighth section of the Act incorporating said Company", was served on the Plank Road Company, was proper. That order or act was one to which that Company was not a party. And if it had been one to which the Company was a party, what use could proof of it serve in the case? To show that the Inferior Court did not stand by acquiescing? But there was no proof or attempt at proof, that the Court did acquiesce. The Jury could not have found, on the ground of acquiescence. In a word, no harm was done the Inferior Court, by the rejection of this evidence.

The testimony of McLendon, which was offered to show how much the Flat Shoals Road, occupied by the Plank Road, was worth by the mile, and how much it would cost the county to obtain the right of way and build another road, was properly rejected. The object of this testimony must have been to enable the Jury to measure the damages to which the complainants supposed themselves to be entitled.

What damages did they pray for? What relief did they pray for?

They prayed as follows: " that the defendants to this bill

may, by the decree of this Court, be *perpetually enjoined* from taking, appropriating or using any part of said public road, for the construction of said plank road, or for the collection of toll, or from obstructing the same, in any manner whatever".

Also as follows: "that the said Company and defendants hereto, may be decreed to pay such *damages* to your orators, as *have been* by them sustained, in consequence of the wrongful and fraudulent proceedings aforesaid".

They also prayed for "general relief" for a temporary injunction of the building of the road, and for security to be given for the damages that might be assessed against the Company.

They did not pray for damages for the *future*, as well as the *past* appropriation of the Flat Shoals Road, in case it should turn out that the Plank Road Company should be found entitled to the future appropriation of it; that is to say, they did not pray for damages to be assessed to them, in case it should be found that the Company, in taking the Flat Shoals Road, had complied with its Charter. The whole prayer goes upon the assumption that the Plank Road Company had not complied with their Charter—had violated the Law—not upon the assumption that it had complied—that it had not violated any law. And the case made by the bill, is one which will support only the former sort of prayer—not the latter.

The damages, then, to which the complainants were entitled, if entitled to any, were for the wrongful acts which the Plank Road Company had done, up to the time of the assessment of such damages, if indeed the company had done any wrongful acts.

But at that moment, the measuring of damages had to stop. Thenceforth, the relief was of another kind—an *injunction* upon the Plank Road Company, from taking and obstructing the Flat Shoals Road, and a *restoration* of the complainants, to their full enjoyment of that road. The complainants, if entitled to anything, were entitled to indemnity for the past and security for the future—not to indemnity for both past and future—not to a decree giving the Flat Shoals Road to the Plank

Road Company, and to them, the complainants, in lieu thereof, a compensation in damages.

The case being of this kind, what sort of facts were the complainants entitled to prove, to make it out—to make out the amount of damages to which they were entitled? The answer is, such facts as would go to show how much loss they had sustained by the obstruction of their road, for the length of time which the obstruction had lasted, viz: from the commencement of the obstruction up to the time of trial.

Now the facts sought to be proved, are not of this sort.— What the Flat Shoals Road was worth by the mile—that is, worth *in perpetuity*, is not of this sort. What it would cost to build a new road, including the purchase, *in perpetuity*, of the right of way, is not of this sort. The Court below, therefore, was right in not allowing either fact to be proved.

[6. Am I to be asked what sort of facts, then, would be admissible, to show the amount of damages in the case, as made? I reply, with some hesitation, such facts as show the actual loss which the complainants have sustained, by reason of the obstruction of the Flat Shoals Road. Did they lay out money in building a new road, to be used in place of the obstructed one? If so, this money would be an item in assessing the damages. Did they or those they represent, have to stay at home in consequence of the obstruction of the road, when their business called them abroad, to their injury, in such and such sums? Then these sums, perhaps, would also be items in counting the damages.

These may, perhaps, serve as instances of the sort of facts which are admissible, to make out the damages in such a case as this.

Yet, I must confess, for myself, that I know of no law which gives damages at all, in such a case.

This case is one, simply of the obstruction of a highway—a public road. If a wrong at all, it is the case of a *common* or *public* nuisance. It is the case of a crime—not of a private wrong. (4 *Black. Com.* 167. 3 *do.* 218. *do.* 5, 6.) It is a case to be reached by indictment, not by an action at Law, for

damages, or by a bill in Equity for damages and injunction.—
It is true the public injury, of nuisance, carries within it injury
to private persons; but for the private part of the injury, the
law has provided a peculiar remedy, viz: one by the mere act
of the party injured. The private person injured may, himself,
abate or remove a nuisance. "If a new gate be erected across
the public highway, which is a *common* nuisance, any of the
King's subjects passing that way, may cut it down and destroy
it".. (3 *Black.* 5, 6.) "No *action* lies for a public or common
nuisance, but an *indictment only*, because the damage being
common to *all* the King's subjects, no *one* can assign *his par-
ticular proportion* of it; or if he could, it would be extremely
hard if every subject in the Kingdom were allowed to harrass
the offender with separate actions. For this reason, no person,
natural or *corporate*, can have an action for a public nuisance,
but only the King in his public capacity of supreme governor
and *paterfamilias* of the Kingdom. Yet this rule admits of
one exception, where a private person suffers some *extraordi-
nary* damage, beyond the rest of the King's subjects, by a
public nuisance; in which case, he shall have a private satis-
faction by action. As if, by means of a ditch dug across a
public highway, which is a common nuisance, a man or his
horse suffer any injury by falling therein, there, for this par-
ticular damage, which is not common to others, the party shall
have his action". (3 *Black. Com.* 219, 220.)

The complainants do not show a case within the exception.
They do not show that they have been damaged beyond the
rest of the people of the State. From what law, then, do they
get a right to an action—to a bill—to *damages*—to an *injunc-
tion?* I know of none.

And then, too, what are the complainants to do with the
damages, if they should recover any? Divide them out among
the citizens of Pike county, for whose "use" they sue? in
what proportion? apply them to county works, jails, court-
houses, &c.? What law requires it?

And again, what is to be the effect of this suit upon other
suits? It is to be a bar to other suits, in favor of the other In-

ferior Courts of the State, who may sue for the "use" of the citizens of their respective counties.   The obstruction of the public highway is, to the citizens of every other county in the State—perhaps in the U. States, an injury of the same kind, if not of the same degree, as it is to the citizens of Pike.   The bill seems to go upon the idea that the Flat Shoals Road *belongs to Pike county*.   If this idea were correct, the suit might perhaps be a bar to all other suits of a similar nature.   But the idea is not correct.   The road is a *public* road.   Every man in the State—in the United States—in the world, for aught I know, has a right to pass over it.

The road, therefore, belongs, if it may be said to belong at all, to the public, at least until the State shall say nay.   And this the Legislature assume, when they give the Road Commissioners absolute power over it, as they do in the Charter of the Plank Road Company.

It is to be borne in mind, that this bill is not a proceeding under that Charter; and therefore, is not affected by anything in that Charter, touching damages.   It is a bill which has to live, if it live at all, in spite of that Charter—not by virtue of it.

And the remedies for such an injury, over and above those prayed for by this bill, are, by our own Statutory regulations, ample.   The Road Law of 1818 declares, that when "any person shall make any fence, or cut any tree, or make other *obstructions* in or across any public road, the Commissioners may be notified of the obstructions, if the same do not come under the knowledge of any of them, (and unless removed in two days,) such person shall, for every such offence, pay a fine not exceeding twenty dollars, to be recovered by warrant, under the hand and seal of any Justice of the Peace, to be applied as herein directed; *and it shall be the duty of the overseer of the road, forthwith to cause the said obstructions to be removed*".   (*Pri. Dig.* 737.)

And the Penal Code, for abating nuisances, provides most fully.   (*Id.* 648.)

Speaking for myself, therefore, I do not see anything in this

case, which gives the complainants the right to any damages, much or little—to any damages, whether measured by this rule or by that.

The complainants offered to prove it not to have been *necessary* for the Plank Road Company to take the part of the Flat Shoals Road which they took—offered to prove that the Plank Road Company could have obtained the right of way over another route, off the Flat Shoals Road, and passing through a country free from ravines and mountain barriers.—The Court would not receive any proof for such purpose.

And in charging the Jury, the Court told them, among other things, that an award, "if fairly obtained, without fraud, settled the question of *necessity*".

Was the Court right in these decisions? To answer this question, we must look to some facts in the case, and to some provisions in the Charter of the Plank Road Company.

First, as to some facts in the case.

It appears, in substance, that between the Plank Road Company and the Commissioners of the Public Roads, for the districts through which the Flat Shoals Road runs:

1. *Agreements* were made, by which the Commissioners were to let the Company have that road on certain terms, namely: for such price or compensation as arbitrators should fix; or such as a Jury should find, in case either party should wish to appeal from the arbitrators to a Jury. This is known, by the fact that the Commissioners and the Company appointed, under the Charter, arbitrators for fixing this price or compensation.

2. It does not appear that the Commissioners were forced or seduced into these agreements. And it will appear presently, that the agreements were such as they had power to make.

3. It appears that under the agreements, arbitrators *acted* and *designated* the terms on which the Plank Road Company was to have the Flat Shoals Road.

4. It appears that the Road Commissioners of every district, except one, *ratified* the awards for their respective districts.

5. It appears that as to the award which was not ratified,

the non-ratification was not unanimous; but that whilst two of the Commissioners disapproved the award, the third approved it; and that as to the disapproval of the two, it was put upon the sole ground, that the arbitrators had not "assessed *as large an amount to be paid* for said road, as those two believed they should have done".

6. It appears that *appeals* from the awards were taken.

7. That these appeals were entered by the *complainants* partly in their own names, and partly in the names of the Commissioners of Roads.

8. It appears that these *complainants* pray, that "adequate security" be given *to them*, by the Plank Road Company, to pay such damages as may be assessed against the Company. This means, assessed in the cases in which *appeals* have been taken. It is true, they also pray to have set aside the awards, and all proceedings between the Road Commismissioners and the Company; and therefore, they pray to set aside the appeals themselves. The bill is strangely incongruous.

Second. As to some provisions of the Company's Charter :

1. By section five, the Plank Road Company has power to "*purchase*" any lands they may find necessary" for their road.

2. By section six, it is declared, that if "*land*" be "required" by the Company, " and the same cannot, for want of agreement between the parties, as to price, or for any other cause, be purchased from the owner, the same may be taken at a valuation to be made by Commissioners", one to be appointed by the Judge of the Superior Court, one by the Company, and one by the owner of the land; but if the owner shall refuse to appoint one, then two to be appointed by the Judge, and one by the Company.

3. That the award of the Commissioners or arbitrators, however, is to be subject to the right, in either party, of an appeal to a Jury, whose verdict is to vest the land in the Company, and in the other party, the right to the value of the land, as. found by the verdict.

4. Section seven declares how the award shall be made.

5. Section eight defines the course to be pursued, "whenever it shall become necessary for the said Plank Road Company to use any part of a public highway, for the construction of said plank road". This course is:

1. "The Commissioners of Roads of the Militia Districts in which such highway is situated, or a majority of them, may agree with the said company, upon the compensation and damages to be paid by the said Company, for taking and using the highway".

2. "In case such agreement cannot be made, the compensation and damages for taking such highway, shall be ascertained in the same manner as the compensation and damages for taking the property of individuals".

Now, under these provisions of the Charter, there are *two* ways by which the Plank Road Company can obtain land for its road.

1. By agreement with the owner of the land.

2. Without agreement with him, and in spite of him.

Our concern is with the first only, of these modes.

There are *two* sorts of agreement by which the Company can obtain such land. First, an agreement, in which the *parties* to it *themselves*, the Company and the land owner, settle *all* the terms of it, including the *price*. Second, an agreement in which the parties to it, *do not* themselves, settle *all* the terms of it; but refer some of the terms—those relating to price or compensation—to third persons, to be settled by those persons for them.

Land obtained in either of these ways, is equally obtained by the mode of *agreement* of the parties. And an agreement to alien for a price already settled by the parties, is no more binding than an agreement to alien for a price, *to be* settled by named persons, who are not parties. The land owner, in co-operating in the second mode, acts voluntarily. Of his own accord, he becomes a party to an agreement which involves the alienation of his land.

Let it be admitted, however, that an agreement of this sort,

is nothing but an agreement to arbitrate a matter; and that it is attended by the ordinary incident of an agreement to arbitrate, viz: that either party may revoke the power of the arbitrators, at any time before the making of the award—still, at least, until the revocation is made, the agreement stands good. And in this case, no revocation by either party, the Commissioners of Roads or the Plank Road Company, has ever been made.

It is quite clear, too, that under the Charter, the Company may obtain, by *agreement, any* land which it pleases to obtain, lying so as to be used for the purposes of its road; and that as to such land as it thus obtains, it lies in the mouth of no third person to complain of the Company, on the ground that such land is not '*necessary*' for the purposes of its road, except, perhaps, in the mouth of the State, in some proceeding against such Company, for a violation or an abuse of its Charter.

Of course, in such a case, the mouth of the land owner himself—of the party to the agreement, is closed.

It *is* also apparent from the Charter—first, that the law-making power considered public highways to *belong to the State;* and second, that it placed the Commissioners of Roads, in the districts through which highways passed, in some respects, in the place and stead of such owner, the State—that it gave to such Commissioners the same power of alienation over such highways, as private persons have over their lands.

These matters of fact and of law being so, could the complainants—the Inferior Court—insist that the part of the Flat Shoals Road taken by the Plank Road Company, was not necessary for the Plank Road, and that, therefore, the taking of it was void? They could not.

1. Such part of that road had been taken by the Company, by virtue of agreements with the Road Commissioners of the districts through which such part passed—agreements, the effect of which was, that the Road Commissioners bound themselves to let the Company have the said parts of that road, for so much compensation as arbitrators, or as a Jury might designate; agreements, by the making of which, the Road Commis-

sioners admitted that there was no open question between them and the Company, except as to the *amount* of compensation, if any, to be paid by the Company; and therefore, that there was no open question, as to the *necessity* of taking such part of the Flat Shoals Road, for the Plank Road.

2. These agreements had been partially or wholly carried out. The arbitrators had been appointed—had made their awards, and these awards, except in one instance, had been confirmed by the Road Commissioners. In that instance, the award was approved by one Commissioner, and disapproved by the other two—only on the ground that the amount of compensation awarded was not enough, as they thought. This matter of disapproval was just such matter as, by the provisions of the Charter, and by the terms of arbitration, was to be referred, by appeal, to a Jury, for settlement.

As to another award, a majority of the Commissioners withdrew, if such a thing is possible, their confirmation. But they did this on a ground which is confined wholly to compensation. They said, "after reflection, we are and ever have been opposed to said Company's taking and using the whole of the now public road, *without opening one by its side*".

The Commissioners of Roads do not once insist, that the part of the Flat Shoals Road taken by the Company, ought to be given up, because not *necessary* to the Company. They complain, when they complain at all, at what they consider the insufficiency of the pay, for certain parts of that road, so taken. For this, an appeal was the fit and the chosen remedy —chosen by the Justices of the Inferior Court themselves.

And even these complaints, when made, are put in no legal form for assertion. These Commissioners, none of them, appeal —none of them become parties complainants in this Equity suit.

If then, except as to the mere matter of compensation—the price to be paid—the Commissioners of Roads are not by these acts, and omissions to act, bound and estopped, it is difficult to say by what they would be. They have not revoked any power which they conferred on the arbitrators, if they could re-

voke such power. They still stand to the agreement to refer the damages.

3. But, although the Commissioners of Roads entered no appeals, the complainants, the Justices of the Inferior. Court, did. How they could appeal, in cases in which they were not parties, is certainly not very manifest; but, admitting that they could do it, does it not follow, [that in appealing, they merely take the place of the parties to the case in which they appeal—the Road Commissioners; and of course that they are bound and estopped by everything which binds and estops those Commissioners? Certainly it does.

Again: in appealing, what do they say? This: We are *willing* to be bound by the verdict of the Jury to which we appeal. What verdict can that Jury render? This: We find that the Plank Road Company shall have the highway, and in place thereof, the Justices shall have so much money or compensation. This is the *sole* verdict the Jury can render. In appealing, therefore, the Justices say, we *agree* the Jury may render this—we *agree* the Plank Road Company may have our highway, but then we must have their money.

And again: in the bill itself, one of the prayers of the Justices is, that the Plank Road Company may be enjoined "from *further* progressing with said work, in taking or using any part of the public highways in said county, *until* it gives adequate security to your orators, the Justices aforesaid, to pay such damages as may be assessed against it". This prayer was sanctioned; the security has been given; and the Company has gone on with the work. Now, when they ask for security for their damages, do they not say we are willing to accept damages? When the security they ask for has been given, do they not say, we have got all we want? It would seem so.

If the Commissioners of Roads were estopped, much more are these Justices estopped. All matter of estoppal which existed against the Commissioners, exists against them, and other matter besides, viz: the appeal—the prayer for security to be given—the given security.

No fraud or other misconduct is charged upon the Commis-

sioners, for entering into the agreements to arbitrate with respect to the Flat Shoals Road. It is not said that the Commissioners repent the having entered into these agreements.

The conclusion is, that these agreements, of themselves, are sufficient to estop the Commissioners of Roads; and also, the Justices of the Inferior Court from complaining against the Plank Road Company, that the parts of the Flat Shoals Road, taken for the Plank Road, were not necessary for the purposes of the Company; and that much more are they sufficient to do this, when followed by the acts by which they were followed—the appeals—the prayer for security—the gift of security.

This being so, it is useless to pursue the inquiry further—to investigate the question whether the awards or the ratifications of the awards, were obtained by fraud or not; or whether a failure to comply with some of the directions of the Charter, as to the making of the awards, vitiates the awards or not. Let it be granted that the awards were obtained by fraud—that the ratifications were obtained by fraud—that the omissions to follow the directions of the Charter, as to the making of the awards, vitiated the awards; still, the *agreements*, that the Company shall have the parts of the Flat Shoals Road, for such compensation as shall be named by referees, stand without objection; therefore, they stand good; and whilst *they* stand good, either of the parties to them have the right to have them enforced. The only effect, therefore, to follow from setting aside the awards, would be to give the parties—the Plank Road Company and the Road Commissioners, an opportunity to begin, anew, the work of executing the existing agreements to arbitrate the compensation. The effect would not be to vest in the Inferior Court power to say that no such arbitration should take place; power to say, *we* think the highway not *necessary* for your Plank Road; and therefore, you shall not have it for love or money. The effect of setting aside the awards, would not be to displace the Road Commissioners from the place in which the State has placed them, and to place the Inferior Court in that place, with power to do what the Charter gives none but the Road Commissioners power to do. Even

if not the awards only, but the agreements on which they are founded, were set aside; if not only superstructure were torn down, but foundation torn up, this effect would not follow.— Even then, the Road Commissioners could make *new* agreements; could let the Plank Road Company have the highway, on just such terms as they might please to let them have it on, and this, in spite of anything which the Inferior Court could do or say to the contrary. In short, the effect of setting aside the awards, would not be to give the Justices of the Inferior Court the right to have the relief they pray for by this bill.

Admit that everything done *under* the Charter, whether by the Company, the Road Commissioners, the Judge, the arbitrators or others, has been wrong, and is absolutely void, what is the consequence? Only to restore things to the condition which they were in, before any attempt was made to execute the Charter. The Charter will still stand; the powers of the Road Commissioners will still remain; the franchises of the Company will still be unabated. It will have forfeited nothing. *Young vs. Harrison*, (6 *Ga.*) Will the Justices of the Inferior Court have gained a veto on the Road Commissioners, or have stepped into the places in which the Legislature placed those Commissioners? By no means.

[7.] The decisions of the Court below, therefore, to the effect that the question, whether it was necessary to the purposes of the Plank Road Company, that they should have the site of the Flat Shoals Road, was barred by the awards, were, in effect, right. It was barred by less than the awards, viz: by the *agreements that there should be awards.*

There are other decisions in the case, which were excepted to. What has been already said, disposes of most of the exceptions; and those that it does not dispose of, are of such a nature that if good, they can be of no service to the plaintiffs in error. The errors complained of, if they exist, do the plaintiffs in error no harm. As long as the *agreements* between the Road Commissioners and the Plank Road Company, to arbitrate, stand good, they give law to the case and to all concerned in the case. The most the Justices of the Inferior

Court can do, is to ask to have those agreements fairly carried out. New referees and new awards, as to the compensation to be paid for the highway, are all to which they can possibly be entitled.

I would not be understood, however, as saying that I think the Inferior Court has, in this case, any rights of any sort.

The judgments, therefore, of the Court below, in the case of the Justices of the Inferior Court, as plaintiffs in error, against the Plank Road Company, ought to be affirmed.

This disposes of one of the two cases which were consolidated.

The other is a case in which the position of the parties is merely reversed. In that the Plank Road Company are the plaintiffs in error; they except to two decisions of the Court below:

1. A decision that citizens of Pike county were competent as Jurors to try the case.

2. A decision that citizens of that county, were competent as witnesses for the Justices of the Inferior Court.

What would be the wrong in this case, should the Justices of the Inferior Court recover? According to the conclusions to which we have come, it could only be damages for the obstruction of a highway—the Flat Shoals Road—and an injunction to prevent the continuance of the obstruction. Supposing, then, they should have recovered damages for that obstruction, what would they have been obliged to do with the money so recovered? Doubtless to pay it over to the County Treasurer for county purposes, just as fines, under the Penal Code, have to be paid over to that officer for those purposes.

The Code declares, that "all fines imposed by this Act, not otherwise appropriated by this Code, shall be paid over by the Clerks of the Superior Court, to the County Treasurer, for county purposes". (*Pr. Dig.* 661.)

Now notwithstanding this provision, it has been uniformly held by the Courts of Georgia, that in criminal cases involving no greater punishment than a fine, citizens of the county are

competent, both for Jurors and for witnesses, on behalf of the State.

Under this view of the Code, if the present case, instead of taking the form which it has taken, had taken another, which it might well have taken, viz: that of an indictment for obstructing a public highway, the citizens of the county would have been competent, both for witnesses and Jurors. And yet, in that form, the result might have been a fine upon the defendant, which would go to the County Treasurer.

[8.] In this State of things, would it be unsafe to apply the maxim—*Ubi eadem ratio ibi idem jus?* (*Co. Litt.* 10 *a.*)

[9.] But the recovery of the Inferior Court would not stop at damages. If entitled to damages, they would be entitled to an injunction, to prevent the plank road from using the public highway. Such an injunction would be equivalent to the temporary or permanent destruction of the plank road. And this would, it may be safely assumed, be more or less of an *injury* to the public. A plank road is a public benefit. The citizens of Pike county are a part of the public : the part which would suffer most by the destruction of the plank road in this case. The injunction would inflict this injury. The recovery which would give damages, would give the injunction. Which would be the greatest to any particular citizen, the gain by the damages, or the loss by the destruction of the plank road? Who can tell? No one. It is not certain, therefore, but that the citizens of Pike would lose more, in losing the plank road, than they would gain in gaining damages for the obstruction of the highway, and in getting the highway re-opened. But unless it were *certain* that the citizens would *gain* by the result of the suit, if it resulted in favor of the plaintiffs, they are not incompetent for Jurors or witnesses. The interest that disqualifies, is one that is *certain.*

Upon the whole, we cannot say that these persons were incompetent, either as Jurors or witnesses.

We therefore reverse none of the decisions of the Court below.